**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  08-3** |
| **v.** | * | **SECTION: "I"** |
| **JOHN N. FOWLER** | * | **MAGISTRATE: (2)** |

*   *   *

## DEFENDANT JOHN N. FOWLER'S SENTENCING MEMORANDUM

**NOW INTO COURT**, comes defendant, John N. Fowler ("Fowler"), by and through counsel, and respectfully submits this memorandum for the Court's consideration in connection with his sentencing which is scheduled for August 7, 2008.

**1.      The Presentence Report**

The presentence report accurately states the facts involved in this case.  The points made herein are simply designed to highlight certain issues for the Court and to provide additional facts not contained in the report.  Fowler does not have any objections to the Sentencing Guideline computations contained in the report.

**2.      Grounds for Departure from the Advisory Guidelines**

**a.   Cooperation and the Government's Motion for Departure**

John Fowler comes before the Court having provided his full cooperation to the government in this matter and having fulfilled all of the terms of his plea agreement.  The government has filed a motion for downward departure pursuant to U.S.S.G. §5K1.1 based

upon defendant's cooperation and substantial assistance to the government in this and related matters. Because that memorandum has been filed under seal, defendant will not address the details here, but will simply request that the Court accept the government's recommendation for a downward departure in arriving at the applicable guidelines calculation in this matter.

### b.  EDI's Voluntary Disclosure

#### i.  Factual Background

In or about May 2006, EDI's three owners, John Fowler, James Angehr, and David Garland, recognized the problem presented by their company's Iranian activities and jointly embarked upon an effort to ensure that their activities, and those of EDI, were brought into full compliance with the law. The first disclosure of the Iranian activity was made to the company's outside counsel, Mark Cunningham, of Jones, Walker. Based on Cunningham's advice, all activities involving Iran were stopped, and a compliance plan was developed and implemented. Cunningham also recommended that each owner retain individual counsel to provide advice on these issues.

Next, the three owners, again based on Cunningham's advice, along with the advice of their individual counsel, turned to consider an investigation into the extent of the activity and the process necessary to make a voluntary disclosure to the government. Unfortunately, by this time, the business relationship between the three had badly deteriorated, with one owner, Garland, generally falling into one camp and the remaining two, Fowler and Angehr falling into another. As a result, it became impossible to have the three owners address these issues jointly with a single approach.

The defendants in this matter, Angehr and Fowler, based on the recommendations of Cunningham and their individual counsel, sought out a nationally regarded expert on Export Control Act violations and Iranian Transaction Regulations. They retained Richard Newcomb, a Washington D.C. attorney and the former Director of the Treasury Department's Office of Foreign Assets Control ("OFAC"), to assist in making the voluntary disclosure to OFAC. However, prior to making the voluntary disclosure, and unbeknownst to them, the third owner, Garland, made a report to the United States Attorney's Office for the Eastern District of Louisiana. As a result of his report, Garland has avoided criminal prosecution in this case.

Thus, not knowing about Garland's report, Angehr and Fowler authorized Newcomb to make a voluntary disclosure, to be followed by a complete investigation into the Iranian activities which would, when completed, be provided to OFAC. On February 26, 2007, Newcomb made both verbal and written disclosures to OFAC indicating that he would be investigating possible violations of the Iranian Transaction Regulations, 31 CFR Part 560.[1]

The events unfolded as follows:

(1)     EDI, and its principals Fowler and Angehr, originally together with their co-owner Garland, disclosed information regarding the Iranian transactions first to corporate counsel and later to their own individual counsel in an effort to achieve compliance with the law through implementation of a compliance plan and a voluntary disclosure;

(2)     Working through counsel, Angehr and Fowler contacted and retained a highly qualified expert and former government regulator to assist in investigating this

---

[1]   Subsequently, the Government, in part, based the charge in this case upon the Iranian Transaction Regulations. Clearly, the disclosure made to OFAC concerned the same activity which eventually became the conduct underlying the Bill of Information in this case.

activity and making a voluntary disclosure to OFAC, the government office charged with administering the Iranian Transaction Regulations;

(3)     The expert made a voluntary disclosure to OFAC and immediately began a thorough internal investigation to determine the extent to the unlawful activity;

(4)     Following the voluntary disclosure and the commencement of the internal investigation, a federal search warrant was executed on the premises of EDI and Angehr and Fowler learned, for the first time, that there was a government investigation into their activities and those of EDI based on the voluntary disclosure of their co-owner David Garland; and

(6)     Almost immediately following the execution of the search warrant, Angehr and Fowler began cooperating with the investigation and accepted responsibility for their actions.

### ii.  Guideline Section 5K2.16

The Policy Statement found at §5K2.16 of the Sentencing Guidelines provides:

> If the defendant voluntarily discloses to authorities the existence of, and accepts responsibility for, the offense prior to the discovery of such offense, and if such offense was unlikely to have been discovered otherwise, a downward departure may be warranted.  For example, a downward departure under this section might be considered where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered.  This provision does not apply where the motivating factor is the defendant's knowledge that discovery of the offense is likely or imminent, or where the defendant's disclosure occurs in connection with the investigation or prosecution of the defendant for related conduct.

U.S.S.G. § 5K2.16.  Although the facts in this case do not squarely fit the requirements of this guideline provision, a departure is warranted because Fowler and Angehr took

substantial steps to voluntarily disclose their conduct to OFAC, prior to becoming aware of a governmental investigation into these activities.

While Fowler concedes that Garland contacted the government prior to the voluntary disclosure by EDI, this should not prevent the consideration of a departure based on voluntary disclosure. Regardless of Garland actions, Fowler and Angehr subjectively acted in a manner which the departure is designed to recognize. Clearly, Garland's disclosure does not negate the numerous steps and great effort that EDI, Fowler and Angehr had undertaken to voluntarily disclose their actions. Chief among these steps was hiring outside advisors to assist them in coordinating a compliance and disclosure plan. Unfortunately, because the relationship with Garland was crippled by infighting over business issues, the three owners were not able to reach an agreement on the process for making a disclosure. In fact, at the time that Garland contacted the government, Fowler and Angehr were already working towards making a disclosure to OFAC independently on behalf of the company and its owners.

A review of the events makes it evident that Fowler's and Angehr's motivation for disclosure was not based on any knowledge that discovery of the offense might be imminent, but on their desire to bring their activities and those of EDI into compliance with the law by informing OFAC of issues it may not have discovered otherwise. Throughout the time that Fowler was working on EDI's voluntary disclosure, he had no indication that Garland was already in the process of independently providing information to the government, nor did he have any reason to believe the government would learn of the offense but for the voluntary disclosure.

In this case, Fowler began undertaking steps toward disclosure to OFAC well before he had any knowledge that the government was aware of his offense, or that he was a suspect.  While the timing of Garland's actions may have obviated the need for Fowler's disclosure, that fact should not color this Court's view of Fowler's original motivation in disclosing his actions to OFAC.  Accordingly, we respectfully ask the court to depart from the guidelines based upon Fowler's voluntarily disclosure this offense to the authorities.

### c.  Fowler's personal characteristics

John Fowler is 69 years old and has, with the exception of this offense here, lived his life in a manner which has earned the respect and admiration of his family, friends and colleagues.  Several letters of support have been submitted to the Court on behalf of John Fowler.  In each case these letters speak of a man of intelligence and ability, character and kindness – someone who, but for this crime – has for his entire adult life been an example to those who surround him.

## 3.     The Sentence

Based on the foregoing, defendant respectfully requests that the Court impose a probationary sentence in this matter.

Respectfully submitted,

JOHN N. FOWLER
BY COUNSEL

 /s/ Richard W. Westling
RICHARD W. WESTLING  (LA BAR #20027)
OBER, KALER, GRIMES & SHRIVER, P.C.
1401 H Street, N.W.
Washington, D.C.  20005-3324
202-326-5012
202-336-5212 (facsimile)
rwwestling@ober.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of August 2008, a copy of the foregoing pleading was served by electronic means through the Court's ECM/EF system on all counsel of record and that a copy was served by electronic means on U.S. Probation Officer David Arena.

        /s/ Richard W. Westling
       RICHARD W. WESTLING

153597.v1